UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Howard Lee Young,<br><br>　　　　　Defendant. | Criminal No. 18-196 (DWF/KMM)<br><br>**MEMORANDUM<br>OPINION AND ORDER** |

Howard Lee Young, Defendant, *Pro Se*.

Joseph Scott Teirab, LeeAnn K. Bell, and Sarah E. Hudleston, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

## INTRODUCTION

This matter is before the Court on Defendant Howard Lee Young's ("Young") *pro se* motion for compassionate release in light of the COVID-19 pandemic. (Doc. No. 130 ("Motion").) The United States of America (the "Government") opposes Young's Motion.[1] (Doc. No. 136.) For the reasons discussed below, the Court respectfully denies Young's Motion.

---

[1] The Court also received and considered Young's reply to the Government's opposition (Doc. No. 148 ("Reply")) and a letter from his fiancée in support of his release. (Doc. No. 149-1.)

## BACKGROUND

On August 15, 2018, Young, along with two other individuals, was charged with a single count of conspiracy to distribute 100 grams or more of heroin from as early as October 2017 to on or about July 15, 2018.  (Doc. No. 10.)  Young pled guilty to that count on February 14, 2019.  (Doc. No. 60 ("Plea Agreement").)

As part of the Plea Agreement, Young agreed that he had distributed between 100 and 400 grams of heroin as part of a conspiracy, including selling heroin to individuals working at the direction of law enforcement as part of a series of controlled buys, and that the heroin included 49.702 grams of fentanyl and 167.66 grams of fentanyl analogue. (Plea Agreement ¶ 2; Doc. No. 91 (Revised Presentence Investigation Report ("PSR") ¶ 16.)

The PSR lays out Young's conduct, namely that he worked primarily with a co-defendant to distribute heroin.  The two were involved in a number of controlled buys and were intercepted on a wiretap discussing drug transactions and firearms.  The PSR counted only the drugs where Young was directly involved in the controlled buys because the inclusion of additional drugs would not impact the base offense level.  (PSR ¶ 37.)

Young's base offense level was 30, and his adjusted offense level was 31 after enhancements for possession of a gun and maintaining a premises, as well as a reduction for acceptance of responsibility, were applied.  Young was in criminal history

category III, and his resulting Guideline range was 135 to 168 months' imprisonment.[2] On May 24, 2019, the Court sentenced Defendant to 90 months. (Doc. No. 97.) Young is currently incarcerated at FCI Elkton in Ohio. BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed July 31, 2020). According to the Bureau of Prisons ("BOP"), Young's release date is December 6, 2024. *Id.*

On or about February 18, 2020, Defendant filed a petition for post-conviction relief pursuant to 28 U.S.C. § 2255 on the grounds that (1) the government constructively amended Count I of his indictment because he was charged with conspiracy to distribute heroin and pled guilty to possession with intent to distribute heroin; and (2) his counsel was ineffective for allowing him to plead guilty to a charge not in the indictment. (Doc. No. 123.) The Court denied Young's petition on May 19, 2020. (Doc. No. 131.)

Young now moves for compassionate release pursuant to 18 U.S.C. § 3582(c) on the grounds that he suffers from high blood pressure and is incarcerated in one the BOP facilities most impacted by the COVID-19 virus. (Motion at 1-2; *see also* Doc. No. 136-1 ("Medical Records")[3].) He asserts that "there are no tests available to the 2,000 plus population at [FCI Elkton], and with a long [sic] portion of the population showing

---

[2] Young's criminal history, though not lengthy, was quite serious. When Young was 18, he was convicted of second-degree murder. (PSR ¶ 58.) After serving 10 years, Young was released on August 23, 2017. (*Id.*) Less than six months later, while under court supervision, Young became involved with the conspiracy for which he is now imprisoned.

[3] The Court also reviewed and considered the supplemental medical records that Young submitted with his Reply. (*See* Doc. No. 149.)

3

symptoms of C[OVID]-19, there is no way possible to separate the sick from the healthy." (Motion at 3.) Young further asserts that with several inmates already having died from virus, "Elkton is on the cusp of becoming a de facto death row." (*Id.*; *see also*, Reply at 2.) He argues that social distancing is "virtually impossible" in the prison setting, and that the actions the BOP has taken to mitigate the spread of the virus have failed. (Motion at 3.)

As of July 31, 2020, 76 inmates and 2 staff members at FCI Elkton were positive for COVID-19. *See* Federal Burau of Prisons, COVID-19 Cases, https://www.bop.gov/coronavirus/index.jsp (last accessed July 31, 2020). Additionally, 926 inmates and 51 staff members have recovered, and 9 inmates have died. (*Id.*) On April 13, 2020, a group of inmates at FCI Elkton brought an emergency habeas action seeking the release of medically vulnerable inmates at the facility due to the spread of COVID-19 within the facility. *See Wilson v. Williams*, 20 Civ. 794 (N.D. Ohio Apr. 13, 2020). The petitioners argued, in relevant part, that "[b]y failing to implement controls necessary to contain the COVID-19 outbreak and stop preventable deaths at Elkton, [prison officials] have violated the Eighth Amendment rights of the [c]lass and especially of the [m]edically-[v]ulnerable [s]ubclass." *Id*.

On April 22, 2020, the court ordered the respondents to, first, identify "all members of the [medically-vulnerable] subclass." *Wilson v. Williams*, 20 Civ. 794, Order, ECF No. 22 (N.D. Ohio Apr. 22, 2020). Then, following identification, the court ordered respondents "to evaluate each subclass member's eligibility for transfer out of Elkton through any means, including but not limited to compassionate release, parole or

4

community supervision, transfer furlough, or non-transfer furlough within two . . . weeks." *Id*. Finally, the court instructed that "[s]ubclass members who are ineligible for compassionate release, home release, or parole or community supervision must be transferred to another BOP facility where appropriate measures, such as testing and single-cell placement, or social distancing, may be accomplished." *Id*.

On April 30, 2020, prison officials filed a list of FCI Elkton inmates that fit the medical criteria of the defined vulnerable subclass, including but not limited to: all inmates over the age of 50, and persons of any age who experience certain enumerated health conditions, ranging from a history of smoking or moderate to severe asthma, to serious heart conditions, diabetes, and more. *See Wilson v. Williams*, 20 Civ. 794, Notice of Identification of Inmates, ECF No. 35 (N.D. Ohio Apr. 30, 2020); *see also* ECF No. 22 (N.D. Ohio Apr. 22, 20200 (defining subclass of inmates to be listed.) Young is not included on the Notice of Identification of Inmates. *See Wilson v. Williams*, 20 Civ. 794, Notice of Identification of Inmates, ECF No. 35 (N.D. Ohio Apr. 30, 2020). Since April, this civil habeas action has been heavily litigated with nearly daily status reports detailing COVID-19 testing and results.

## DISCUSSION

Under 18 U.S.C. § 3582(c)(1)(A)(i), a Court may reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also

5

consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement addressing reduction of sentences under § 3582(c)(1)(A) asserts in relevant part that a court may reduce a defendant's term of imprisonment after considering § 3553(a) factors if it finds that: (1) "extraordinary and compelling reasons warrant the reduction;" (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (3) "the reduction is consistent with this policy statement."[4] USSG § 1B1.13 ("Statement"). The Statement includes an application note that defines "extraordinary and compelling reasons" as (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories.[5] *Id.*

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement. 18 U.S.C. § 3582(c)(1)(A). Specifically, a

---

[4] While the policy statement refers only to motions filed by the BOP Director, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants.

[5] The Statement cites examples of qualifying medical conditions including metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia. (Statement.)

6

defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[6] *Id.*

The record reflects that Young requested compassionate release from the warden at FCI Elkton on April 13, 2020 and that his request was denied on April 24, 2020. (Doc. Nos. 148-3, 148-4.) Therefore, the Court finds that Young's Motion is properly before the Court.

Notwithstanding, after a careful review of Young's Motion and supporting exhibits, including his Medical Records, the Court finds that his circumstances do not meet the demanding standard for compassionate release. Specifically, the Court finds that Young's medical condition and the fact that he is incarcerated at FCI Elkton do not alone, or in combination, qualify as extraordinary or compelling reasons to warrant immediate release.

According to his Medical Records, Young, who is 34 years old, was diagnosed with "[e]ssential (primary) hypertension" on July 19, 2019.[7] (Medical Records at 7.)

---

[6] While judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A). *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

[7] His Medical Records also reflect that Young has a history of hypertension. (Medical Records at 7; *see also* Doc. No. 149.)

The report also states that Young was "not currently on medication" and had not been on medication for the past year.[8]  (*Id.* at 4, 7.)  His Medical Records also reflect that Young's most recent blood pressure reading, taken on July 24, 2019, was 112/79.[9] (Medical Records at 14.)  While the Court understands that Young's history of hypertension is concerning, particularly in light of the COVID-19 pandemic, the Court finds that Young's condition is currently under control, and that he is otherwise in good health.  Accordingly, the Court finds that Young does not present any medical issue that is sufficiently extraordinary or compelling to warrant immediate release.

The Court also recognizes Young's concern with respect to the severity of COVID-19 at FCI Elkton.  It is correct that FCI Elkton has suffered a massive outbreak, and that sadly, several inmates have died from the virus.  Notwithstanding, and in no small part due to the pending civil habeas action, the Court finds that in light of FCI Elkton's current measures to mitigate the spread of COVID-19, including massive testing, identification of vulnerable inmates, and intensive evaluation of those eligible for

---

[8]     The record does not reflect that Young is currently medicated for hypertension.

[9]     The Centers for Disease Control and Prevention ("CDC") provides that a normal blood pressure level is less than 120/80 mmHG.  *See* CDC, High Blood Pressure Symptoms and Causes, https://www.cdc.gov/bloodpressure/about.htm (last accessed July 31, 2020.)  It further provides that a person does not typically suffer from hypertension unless their blood pressure is consistently at least 130/80 mm HG or higher, with some practitioners requiring consistent readings of at least 140/90 mm HG or higher. *Id.*

release, merely being incarcerated at FCI Elkton is insufficiently extraordinary or compelling to warrant immediate release.[10]

In short, while the Court understands the gravity of the COVID-19 pandemic and recognizes Young's concerns, the Court finds that the circumstances do not present an extraordinary and compelling reason to warrant release. Accordingly, the Court respectfully denies Young's Motion.[11]

## CONCLUSION

For the reasons set forth above, the Court finds that Young is ineligible for compassionate release because he does not present an extraordinary and compelling reason to warrant release.

---

[10] The Court also notes that effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of the COVID-19" and "to ensure the continued effective operation of the federal prison system." *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp (last accessed July 31, 2020). Those steps include limiting visits and internal movement, increased hygiene measures, and screening of both staff and inmates. (*Id.*) Current measures also include a 14-day isolation period, and limited group gatherings. *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan Phase V, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last accessed July 31, 2020). While these steps did not prevent an outbreak of COVID-19 at the FCI Elkton facility, the Court finds that continued adherence to these guidelines, combined with actions required pursuant to the civil habeas action, positions FCI Elkton to mitigate its spread and protect its inmates. Indeed, the fact that over 900 inmates at FCI Elkton have recovered from the Virus signals that the facility has been able to provide effective treatment.

[11] Because Young fails to present a "extraordinary and compelling" reason to warrant release, the Court need not consider the § 3553(a) factors or whether he poses danger to the safety of any other person or to the community. *See* 18 U.S.C. § 3582(c)(1)(A); Statement.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Howard Lee Young's Motion for Release (Doc. No. [130]) is respectfully **DENIED**.

Date: August 3, 2020                                  s/Donovan W. Frank
                                                                  DONOVAN W. FRANK
                                                                  United States District Judge