## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                                      Criminal No. 18-196(2) (DWF/KMM)

             Plaintiff,

v.                                                                                    **MEMORANDUM**
                                                                                    **OPINION AND ORDER**

Howard Lee Young,

             Defendant.

---

Andrew H. Mohring, counsel for Defendant

Joseph Scott Teirab, LeeAnn K. Bell, and Sarah E. Hudleston, Assistant United States Attorneys, United States Attorney's Office, counsel for the Government.

---

### INTRODUCTION

This matter is before the Court on Defendant Howard Lee Young's ("Young")

Motion for Compassionate Release from Custody in light of the COVID-19 pandemic.[1]

(Doc. No. 154 ("Motion").)  The United States of America (the "Government") opposes

---

[1]     On May 4, 2020, Young filed a *pro se* motion for compassionate release in light of the COVID-19 pandemic.  (Doc. No. 130 ("*pro se* Motion").)  The Court denied Young's *pro se* Motion on August 3, 2020.  (Doc. No. 150 ("Denial)".)  Young was appointed counsel on August 4, 2020.  (*See* Doc. Nos. 151-52.)  On August 18, 2020, Young's counsel filed the instant motion, a subsequent request for compassionate release pursuant to the COVID-19 pandemic.  (*See* Motion.)

Young's Motion.[2]  (Doc. No. 158.)  For the reasons discussed below, the Court

respectfully denies Young's Motion.

## BACKGROUND

The factual background for the above-entitled matter is clearly and precisely set

forth in the Court's August 3, 2020 Order denying Young's *pro se* Motion and is

incorporated by reference herein.[3]  (*See* Denial.)  Briefly, on February 14, 2019, Young

pled guilty to a single count of conspiracy to distribute 100 grams or more of heroin.

(*See* Doc. Nos. 10, 56, 60.)

On May 24, 2019, the Court sentenced him to 90 months' imprisonment to be

followed by a 5-year term of supervised release.[4]  (Doc. No. 97.)  Young is currently

incarcerated at FCI Elkton in Ohio.  BOP Inmate Locator,

https://www.bop.gov/inmateloc/ (last accessed September 2, 2020).  According to the

Bureau of Prisons ("BOP"), Young's release date is December 6, 2024.  *Id.*

---

[2]     The Court also received and considered Young's reply to the Government's
opposition (Doc. No. 160 ("Reply").)

[3]     The Court supplements the facts relevant to this Order as needed.

[4]     Young's base offense level was 30, and his adjusted offense level was 31 after
enhancements for possession of a gun and maintaining a premises, as well as a reduction
for acceptance of responsibility, were applied.  (*See* Doc. No. 91 ("PSR") ¶ 6.)  Young
was in criminal history category III, and his resulting Guideline range was 135 to 168
months' imprisonment.  (*Id.*)

Young's criminal history, though not lengthy, was quite serious.  When Young
was 18, he was convicted of second-degree murder.  (*Id.* ¶ 58.)  After serving 10 years,
Young was released on August 23, 2017.  (*Id.*)  Less than six months later, while under
court supervision, Young became involved with the conspiracy for which he is now
imprisoned.

Young now moves for compassionate release pursuant to 18 U.S.C. § 3582(c) on the grounds that he suffers from "diagnosed medical conditions, hypertension and obesity" which "place him at a high risk of serious illness and death from the COVID-19 coronavirus." (Motion at 1; *see also* Doc. No. 155 ("Def. Memo.") at 1-2, 18-19; Reply at 4; *see generally* Doc. No. 157at 1-44 ("Medical Records").) Young argues further that his risk of illness is elevated because he is imprisoned "in a facility currently being ravaged by the coronavirus, where taking precautionary measures and performing self-care—steps deemed necessary by the Centers for Disease Control for people in his medical predicament—are impossible."[5] (Motion at 1; *see also* Def. Memo. at 1, 3, 6-11.)

---

[5]     Young previously argued that compassionate release was warranted because he suffered from hypertension and because FCI Elkton was one of the BOP facilities most impacted by the COVID-19 virus. (*Pro se* Motion at 1-2.) The Court found that Young's medical condition and the fact that he was incarcerated at FCI Elkton did not alone, or in combination, qualify as extraordinary or compelling reasons to warrant immediate release. (Denial at 7.)

Specifically, the Court observed that while Young was diagnosed with primary hypertension on July 19, 2019, he had not been on medication for the past year and his most recent blood pressure reading was well within the normal range. (*Id.* at 8.) The Court also recognized Young's concern with respect to the outbreak at FCI Elkton but found that the facility had taken appropriate steps to mitigate the spread of COVID-19 such that merely being incarcerated there was insufficiently extraordinary or compelling to warrant immediate release. (*Id.* at 9.)

Young's Motion is premised on the same arguments; however, he now asserts that he suffers from obesity. (*See generally* Motion; Def. Memo.; Reply.) The record reflects that Young's body mass index is just over 30. (*See* Medical Records at 14 (indicating height of 72 inches and weight of 228 pounds); *see also* PSR at f.2.) According to The Centers for Disease Control and Prevention ("CDC"), people with a body mass index of 30 or higher are at an increased risk for serious illness from COVID-19. *See* CDC, People of Any Age with Underlying Medical Conditions, updated August 14, 2020,

3

As discussed at length in its Denial and summarized here, in mid-April 2020, a

group of inmates at FCI Elkton brought an emergency habeas action seeking the release

of medically vulnerable inmates at the facility due to the spread of COVID-19 within the

facility.  *See Wilson v. Williams*, 20 Civ. 794 (N.D. Ohio Apr. 13, 2020).  On April 22,

2020, the court granted petitioner's request for a preliminary injunction and ordered

respondents to:  (1) identify all members of the medically vulnerable subclass;

(2) evaluate each subclass member's eligibility for transfer out of Elkton through any

means including compassionate release; and (3) instructed that subclass members who

were ineligible for compassionate release, home release, or parole or community

supervision must be transferred to another BOP facility.  *Id.* at 10-11.

On April 30, 2020, prison officials filed a list of FCI Elkton inmates that fit the

medical criteria of the defined vulnerable subclass, including but not limited to:  all

inmates over the age of 50, and persons of any age who experienced certain enumerated

health conditions, ranging from a history of smoking or moderate to severe asthma, to

serious heart conditions, diabetes, and more.  *See id.* at Doc. Nos. 22 (defining subclass

of inmates to be listed); 35 (Notice of Identification of Inmates ("Notice")).  Young was

not included on that list.  *See* Notice.  Moreover, the Sixth Circuit vacated the district

---

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-
medical-conditions.html (last accessed September 2, 2020).

court's preliminary injunction on June 9, 2020.[6] *Wilson v. Williams*, 961 F.3d 829, 845

(6th Cir. 2020).

Since April, testing has increased and the number of active COVID-19 cases at

FCI Elkton continues to decrease.  For example, at the time of the Court's Denial on

August 4, 2020, 76 inmates and 2 staff persons at FCI Elkton were positive for

COVID-19.  (Denial at 4.)  Additionally, 926 inmates and 51 staff persons had recovered,

and 9 inmates had died.  (*Id.*)  As of September 2, 2020, just 3 inmates and 2 staff

persons at FCI Elkton were positive for COVID-19.  *See* Federal Burau of Prisons,

COVID-19 Cases, https://www.bop.gov/coronavirus/index.jsp (last accessed

September 2, 2020).  Moreover, 971 inmates and 51 staff persons had recovered, and the

total number of deaths remained at 9.  *Id.*

## DISCUSSION

Under 18 U.S.C. § 3582(c)(1)(A)(i), a Court may reduce a defendant's term of

imprisonment if it finds that "extraordinary and compelling reasons warrant such a

reduction" and "such a reduction is consistent with applicable policy statements issued by

the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also

consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are

applicable."  18 U.S.C. § 3582(c)(1)(A).

---

[6]     The Eighth Circuit found that the district court abused its discretion when it
granted petitioners' preliminary injunction because petitioners failed to show a likelihood
of success on their Eight Amendment Claim.  *Wilson v. Williams*, 961 F.3d 829, 845 (6th
Cir. 2020).

The Sentencing Commission's policy statement addressing reduction of sentences under § 3582(c)(1)(A) asserts in relevant part that a court may reduce a defendant's term of imprisonment after considering § 3553(a) factors if it finds that: (1) "extraordinary and compelling reasons warrant the reduction;" (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (3) "the reduction is consistent with this policy statement."[7]  USSG § 1B1.13 ("Statement").  The Statement includes an application note that defines "extraordinary and compelling reasons" as (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories.[8]  *Id.*

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A).  Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on

---

[7]     While the policy statement refers only to motions filed by the BOP Director, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants.

[8]     The Statement cites examples of qualifying medical conditions including metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia.  Statement at n.1(A)(i).

the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the

warden of the defendant's facility, whichever is earlier . . . ."[9]  *Id.*

The record reflects that Young requested compassionate release from the warden

at FCI Elkton on April 13, 2020 and that his request was denied on April 24, 2020.  (Doc.

Nos. 148-3, 148-4 ("April Denial").)  The record does not reflect that Young requested

release from the warden based on his new argument that he suffers from obesity.

Therefore, the Court lacks jurisdiction to consider his Motion.  *See United States v.

Mendoza*, Cr. No. 10-313, 2020 WL 4018222, at *5-6 (D. Minn. July 16, 2020.)  "[T]he

Court does not view the administrative exhaustion of an initial request for compassionate

release as serving to discharge that requirement for subsequent requests based on

different evidence and argument."  *United States v. Jenkins*, Cr. No. 4:15-3079, 2020 WL

1872568, at *1 (D. Neb. Apr. 14, 2020).  This is because "the Court cannot consider a

motion for compassionate release that is based on evidence or arguments that weren't

presented to the Bureau of Prisons first."  *Id.*; *see also United States v. Mogavero*,

Cr. No. 2:15-00074, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020) ("Proper

exhaustion necessarily requires the inmate to present the same factual basis for the

compassionate-release request to the warden.  Indeed, 28 C.F.R. § 571.61, which outlines

the process for submitting a § 3582(c)(1)(A) request to the warden, requires the request to

---

[9]     While judicially created exhaustion requirements may sometimes be excused, no
exception applies to a statutory command such as that presented in Section
3582(c)(1)(A).  *See Ross v. Blake*, 136 S. Ct. 1850, 855-57 (2016) (rejecting judicially
created "special circumstances" exception to the exhaustion requirement unambiguously
stated in the Prison Litigation Reform Act of 1995).

contain, 'at a minimum . . . [t]he extraordinary or compelling circumstances that the inmate believes warrant consideration.'" (Citing 28 C.F.R. § 571.61)); *United States v. Valenta*, Cr. No. 15-161, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020); *United States v. Gardner*, Cr. No. 13-0035(1), 2020 WL 1867034, at *2 (D. Minn. Apr. 14, 2020).  Accordingly, the Court finds that while Young properly exhausted his administrative remedies with respect to his *pro se* Motion, he was obligated to first submit an amended request to the warden at FCI Elkton to consider his additional basis for release before moving this Court.[10]

Even if the Court had the authority to consider Young's Motion, the Court finds that it also fails on the merits because his circumstances still fail to meet the demanding standard for compassionate release.  Specifically, the Court once again finds that Young's medical conditions and the fact that he is incarcerated at FCI Elkton do not alone, or in combination, qualify as extraordinary or compelling reasons to warrant immediate release.

First, Young presents no new information to alter the Court's analysis with respect to his hypertension.  While he now argues that he also suffers from obesity, the Court declines to grant compassionate release on this basis alone, or in combination with any other circumstance Young presents.  The Court understands that obesity does increase

---

[10]    The Court understands that Young finds this requirement onerous and feels that it should be excused in light of the "form letter" Young received denying his April Request and his belief that adding an additional medical condition would not alter the BOP's decision.  (*See* Reply at 2-3.)  Young's dislike of the requirement, however, does not negate his responsibility to comply with it or alter the Court's jurisdiction over the matter until he does.

Young's risk of severe illness should he contract COVID-19; however, the Statement

clearly indicates that compassionate release is warranted only under truly extraordinary

and compelling circumstances—namely, medical conditions which diminish the ability of

the defendant to provide self-care in prison and from which he or she is not expected to

recover.  *See* Statement.  Here, Young's blood pressure is well-controlled, and despite

being just over the border of what the CDC defines as high risk for severe illness from

COVID-19 based on his weight, Young is in otherwise good health.

Moreover, based on the significant decrease of positive COVID-19 cases and the

large number of those who have recovered from the virus at FCI Elkton, the Court finds

that the facility's mitigation efforts have been effective and that there is no indication it

will be unable to properly care for Young in the unfortunate event that he becomes ill.[11]

In short, the Court continues to recognize Young's concerns related to the

COVID-19 pandemic.  Notwithstanding, the Court still finds that his circumstances do

---

[11]     The Court reiterates that Effective March 13, 2020, the BOP required all of its
facilities to implement a set of measures "to mitigate the spread of the COVID-19" and
"to ensure the continued effective operation of the federal prison system."  *See* Federal
Bureau of Prisons, BOP COVID-19 Action Plan,
https://www.bop.gov/resources/news/20200313_covid-19.jsp (last accessed September 2,
2020).  Those steps include limiting visits and internal movement, increased hygiene
measures, and screening of both staff and inmates.  (*Id.*)  Current measures also include a
14-day isolation period, and limited group gatherings ("Plan").  *See* Federal Bureau of
Prisons, BOP COVID-19 Action Plan Phase V,
https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last
accessed September 2, 2020).  The BOP periodically updates its Plan and is currently in
Phase IX.  BOP COVID-19 Action Plan Phase VII, https://prisonology.com/wp-
content/uploads/2020/08/COVID-19-Phase-9-COVID-Action-Plan.pdf.  (last accessed
September 2, 2020); *see also* BOP Implementing Modified Operations,
https://www.bop.gov/coronavirus/covid19_status.jsp (last accessed September 2, 2020.)

not present an extraordinary and compelling reason to warrant release.  Accordingly, the

Court respectfully denies Young's Motion.[12]

## CONCLUSION

For the reasons set forth above, the Court finds that Young is ineligible for

compassionate release because he has failed to exhaust his administrative remedies with

respect to his updated claim.  Even if the Court could consider his Motion, the Court

denies it on the merits because Young's circumstances fail to meet the demanding

standard necessary to warrant compassionate release.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT

IS HEREBY ORDERED** that Defendant Howard Lee Young's Motion for

Compassionate Release from Custody (Doc. No. [154]) is respectfully **DENIED**.


Date:  September 4, 2020                          s/Donovan W. Frank
                                                  DONOVAN W. FRANK
                                                  United States District Judge

---

[12]     Because the Court lacks jurisdiction to consider Young's Motion, and because
even if it could, the Motion also fails on the merits because Young fails to present a
"extraordinary and compelling" reason to warrant release, the Court need not consider the
§ 3553(a) factors or whether he poses danger to the safety of any other person or to the
community.  *See* 18 U.S.C. § 3582(c)(1)(A); Statement.